UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOREN W. BUCHMEIER and
CHRISTOPHER W. ERFFMEYER,

    Plaintiffs,

    v.

CITY OF BERWYN, MAYOR ROBERT
LOVERO, and UNIT COMMAND OFFICER
LT. JAMES SASSETTI OF THE BERWYN
POLICE DEPARTMENT,

    Defendants.

No. 14 C 6750
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

On September 2, 2014, Plaintiffs Loren Buchmeier and Christopher Erffmeyer (together, "Plaintiffs") filed a complaint against Defendants City of Berwyn, Mayor Robert Lovero, and Unit Command Officer Lt. James Sassetti of the Berwyn Police Department (the "BPD") (collectively, "Defendants"), alleging that Defendants conspired to deprive them of their right of access to the courts (Count I) under 42 U.S.C. § 1983. Plaintiffs have further alleged state law claims against City of Berwyn officials and members of the BPD for intentional infliction of emotional distress ("IIED") (Count II) and conspiracy to inflict emotional distress (Count III). Counts II and III are the basis for two further state law claims against Defendant City of Berwyn under *respondeat superior* liability (Count IV) and indemnification liability (Count V). Defendants move to dismiss Plaintiffs' complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted on all Counts.

1

## FACTUAL BACKGROUND

The following facts are adopted from Plaintiffs' complaint and are accepted as true for the purpose of evaluating Defendants' motion to dismiss.

Plaintiffs' allegations stem from an incident (the "Incident") on September 2, 2012 inside a pub in Berwyn, Illinois. Plaintiff Buchmeier, who is a City of Berwyn police officer, was off duty while patronizing the pub with his cousin, Plaintiff Erffmeyer. In the late evening hours, the Plaintiffs were beaten by known assailants ("Assailants"), including the niece of Defendant Mayor Lovero. Plaintiffs characterize the attack as severe and claim that it constituted criminal aggravated assault and criminal aggravated battery. The BPD dispatched numerous officers to the scene, where they arrested seven individuals whom Plaintiffs identified as their Assailants. The supervising officer that evening was Sergeant Ramon Ortiz. Plaintiff Buchmeier indicated to Ortiz that he wanted to sign criminal complaints against the Assailants, and he confirmed this desire with another police officer at the scene. Plaintiffs were then transported to MacNeal Hospital for treatment of their injuries.

Meanwhile, Ortiz was contacted on his cell phone by Defendant Sassetti. After learning what happened and who had been arrested, Sassetti informed Ortiz that the arrested individuals were political allies and friends of Mayor Lovero. Sassetti instructed Ortiz to convince Plaintiffs—through the offer of monetary restitution, if necessary—to agree not to sign criminal complaints against Assailants. Ortiz went to the hospital and followed Sassetti's instructions, but Buchmeier refused to accept monetary compensation from Assailants' families in exchange for his renunciation of criminal charges. Sassetti then took matters into his own hands. He went to the hospital in the early morning hours of September 3, 2012 and pressured Plaintiffs into signing criminal refusal forms under duress. Once the forms were signed, the BPD immediately

released all of the arrested individuals with no charges filed. All investigations of the matter ceased.

In an attempt to redress what he viewed as a conspiracy to cover up the Incident, Buchmeier retained legal counsel. His attorney communicated with the BPD Police Chief, who said that an internal investigation was open regarding any crimes that may have taken place with respect to the Incident. The Chief promised to keep the attorney apprised of the investigation and indicated that all communications from the City of Berwyn would come through him. Notwithstanding this promise, Buchmeier's attorney was contacted separately by Mayor Lovero, who invited him to a meeting with two other attorneys, ostensibly the Mayor's own counsel and counsel for the Assailants. At the meeting, Mayor Lovero implied that if Buchmeier were to press criminal charges against the Assailants, Buchmeier might also be charged criminally on the basis of racist remarks he allegedly said on the night of the Incident. Buchmeier's attorney then attempted to negotiate a civil damages resolution with the attorney seemingly representing the Assailants, but an agreement could not be reached. Buchmeier's attorney reiterated that his client was not interested in exchanging money for his refusal to press criminal charges.

The BPD Chief failed to contact Buchmeier's attorney to share the results of the internal investigation. Via a Freedom of Information Act request, Buchmeier learned that the Assailants would not be charged criminally and that Sassetti was found to be responsible for the investigation and documentation of the Incident. The BPD file indicated that Sassetti delayed the investigation; allowed arrested individuals to be released without proper interviews or documentation; and attempted to negotiate monetary deals without adequate justification for his or his subordinate BPD officers' conduct. In October 2013, Buchmeier's attorney sent the BPD a letter requesting that an independent investigative agency be appointed to look into the criminal

3

culpability of the Assailants. In response, the City of Berwyn officially rescinded Plaintiffs' signed refusals to prosecute and invited them to file a complaint with the BPD. As a result of the Incident and his resultant injuries, Buchmeier had to call in sick for five days, was placed on extended medical leave for 33 days, and was assigned to light duty for 102 days.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) does not test the merits of a claim; rather, it tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

### I. Denial of Access to Courts Claim (Count I)

Plaintiffs allege that Defendants, individually, jointly and in conspiracy covered up the criminal and civil culpability of the Assailants by intimidating Plaintiffs into signing criminal refusals, obstructing a proper investigation of the Incident, and falsely and/or incompletely documenting evidence of the Incident. Plaintiffs plead that Defendants thereby violated their constitutional rights to judicial redress for their alleged injuries under the First, Fifth, and Fourteenth Amendments.

A plaintiff may bring a valid claim for relief under § 1983 if he can show that someone acting under color of state law deprived him of a right protected by the Constitution. *Rossi v. City of Chicago*, No. 13-3795, 2015 WL 3827324, at *3 (7th Cir. June 22, 2015). The Supreme Court has affirmed that the First and Fourteenth Amendments safeguard an individual's right to seek legal redress for claims that have a reasonable basis in law and fact. *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Accordingly, efforts by state actors to interfere with an individual's right of court access may be actionable as a deprivation of constitutional rights under § 1983. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Based on the requirement that judicial access be "adequate, effective, and meaningful," *id.* at 822, the Seventh Circuit has held that "when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995). The question for this Court is whether the facts as alleged rendered hollow Plaintiffs' right to seek redress.

A generous reading of Plaintiffs' complaint recognizes three underlying causes of action that were potentially impeded by Defendants' conduct: criminal aggravated assault, criminal aggravated battery, and civil battery. With respect to the first two criminal claims, Plaintiffs base their corresponding denial of access claim on the assumption that they have a "right to testify on behalf of the People of the State of Illinois in a criminal proceeding." This assumption, however, is not grounded in any constitutional right. Private plaintiffs do not have a right to compel the government to file criminal charges against other individuals. *See Dorko v. Godinez*, 2012 WL 5268675, at *6 (S.D. Ill. Oct. 24, 2012) (citing *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)); *Cole v. Johnson*, No. 14-CV-01059-JPG, 2014 WL 5785282, at *5 (S.D. Ill. Nov. 6, 2014) (referencing *Esmail v. Macrane*, 53 F.3d 176 (7th Cir.1995)) (noting that selective prosecution is

5

only actionable under the Constitution if allegedly based on retaliation or denial of equal protection). Nor do Plaintiffs have a prosecutorial right, as they claim, under the "Illinois Victims Bill of Rights,"[1] which expressly states that it does not grant any person a cause of action for damages or attorney fees. 725 Ill. Comp. Stat. Ann. 120/9. Without any underlying right to press criminal charges against their Assailants, Plaintiffs have no corresponding right of judicial access with which Defendants could have interfered. Therefore, the only right on which Plaintiffs' denial of access claim can possibly be based is their right to pursue a civil action.

The Seventh Circuit recently decided a case with facts that closely track those here. In *Rossi v. City of Chicago*, No. 13-3795, 2015 WL 3827324, at *4 (7th Cir. June 2015), the plaintiff claimed that police officers failed to investigate an assault against him in order to shield another police officer involved in the attack from criminal scrutiny. The Seventh Circuit affirmed the lower court's grant of summary judgment for defendants, explaining that "mere inactivity by police does not give rise to a constitutional claim." *Id.*, at *4. Like the plaintiff in *Rossi*, Plaintiffs Buchmeier and Erffmeyer were not precluded from seeking civil relief due to the alleged misconduct of Defendants. In both cases, the plaintiffs were attacked by known assailants in an identified location, and they had access to witnesses, medical records, and other documentary evidence. *Id.*, at *5. Indeed, Plaintiffs emphasized in their complaint that they personally identified the Assailants for the police; moreover, each Plaintiff could presumably rely on his cousin and co-Plaintiff to testify as an eyewitness to the Incident. As the Seventh Circuit has found in similar cases, Plaintiffs were not deprived meaningful access to the courts where they were personally involved in the Incident and thus had firsthand knowledge of the facts necessary to file a civil action when the claim arose. *Id. See also Thompson v. Boggs*, 33 F.3d 847, 852 (7th

---

[1] This Court assumes that Plaintiffs' unattributed reference to the "Illinois Victims Bill of Rights" is to the Rights of Crime Victims and Witnesses Act.

Cir. 1994).

While Defendants need not "literally bar the courthouse door" for a right of access claim to arise, *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overr'd on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005), their alleged interference in the Plaintiffs' civil action does not rise to the level of a constitutional violation. Plaintiffs' signing of criminal refusal forms (whether coerced or not) did not preclude them from filing a civil action. In fact, as Defendants point out in their motion to dismiss, Plaintiffs previously filed a civil lawsuit against eight individual defendants for claims related to the Incident, indicating Plaintiffs' unobstructed ability to seek legal redress.[2] Further, Plaintiffs' allegations do not state that the City attempted to legitimize any particular competing view of the factual circumstances surrounding the Incident so as to alter the presumptions that would apply in a civil suit. Like the plaintiff in *Rossi*, Plaintiffs' civil case likely would have been stronger had Defendants conducted a thorough investigation of the Incident, *Rossi*, at *5, but that fact alone does not support the conclusion that Plaintiffs were deprived of their rights to seek legal redress. *Id. See also Cook v. City of Chicago*, No. 06 C 5930, 2014 WL 4493813, at *7 (N.D. Ill. Sept. 9, 2014) (denial of access to courts only arises where an alleged cover-up is to some extent successful).

For all of the reasons set forth above, Plaintiffs have failed to state an actionable claim of denial of judicial redress under § 1983. Plaintiffs' § 1983 conspiracy claims also fail, as a constitutional deprivation is a necessary predicate to a § 1983 conspiracy action. *Buford v. City of Chicago, Ill.*, No. 08 C 214, 2009 WL 4639747, at *4 (N.D. Ill. Dec. 3, 2009) (citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982)). Similarly, given Plaintiffs' failure

---

[2] This Court may take judicial notice of matters of public record, including the lawsuit referenced by Defendants. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). Therefore, contrary to Plaintiffs' assertion, Defendants' reference to Plaintiffs' previously filed lawsuit does not convert their motion to dismiss into one for summary judgment.

to state any viable claim under § 1983, Plaintiffs cannot hold Defendant City of Berwyn liable for such a claim under a theory of *respondeat superior*, and this Court need not evaluate the merits of the parties' arguments under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). I therefore grant Defendants' motion to dismiss Count I against all Defendants.

## II.     State Law Claims (Counts II–V)

Plaintiffs allege the following state law claims against Defendants: intentional infliction of severe emotional distress (Count II), conspiracy to inflict severe emotional distress (Count III), *respondeat superior* liability against Defendant City of Berwyn (Count IV), and indemnification liability against Defendant City of Berwyn under 745 ILCS § 10/9-102 (Count V).

### A.     Statute of Limitations for State Law Claims

Defendants argue that all of Plaintiffs' state law claims are time-barred under the Tort Immunity Act. Although plaintiffs are generally not required to negate statute of limitations defenses in their complaints, they may plead themselves out of court by alleging facts that clearly show the applicable statute of limitations period has passed. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009). In determining whether Plaintiffs have done so here, this Court addresses two intertwined questions: (1) whether Plaintiffs have alleged a "continuing violation" of their state law rights by Defendants, and (2) whether Plaintiffs have asserted state law claims against Defendants as individuals or solely as City of Berwyn officials.

The Tort Immunity Act requires that civil actions against local government entities and their employees be commenced within one year from the date that the injury was received or cause of action accrued. 745 Ill. Comp. Stat.. 10/8-101(a). Defendants argue that all of Plaintiffs' allegations concern the Incident on September 2, 2014, which occurred more than one year prior

8

to the filing of this lawsuit. In response, Plaintiffs argue that their state law claims were pled in part against Defendants Sassetti and Lovero as individuals and are thus subject to a two-year statute of limitations. *See* 735 Ill. Comp. Stat. Ann. 5/13-202. Moreover, Plaintiffs assert that their complaint states violations based on *ongoing* wrongful conduct—namely, covering up the Assailants' civil and criminal culpability—which they claim continued through November 2013 (when the BPD rescinded Plaintiffs' signed refusals to prosecute). For the following reasons, I find that Plaintiffs' state law claims against only Sassetti, and not Lovero or the City of Berwyn, are time-barred under the Tort Immunity Act.

    **1.    Claims against Defendant City of Berwyn**

Both parties rely on *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003), where the Supreme Court of Illinois explained that with a properly pled "continuing violation," the statute of limitations period does not begin to run until the date of the last injury or the date that the unlawful acts cease. *Id.* at 278. The *Feltmeier* court emphasized that a "continuing violation" is occasioned by ongoing unlawful acts and conduct, "not by continual ill effects from an initial violation." *Id*. Plaintiffs' complaint alleges a cover-up by BPD police officers, involving a failure to bring criminal charges against the Assailants and "extreme and outrageous" conduct related to the investigation of the Incident. Although much of the conduct complained of stems from the night of the Incident, Plaintiffs have alleged subsequent actions on the part of the BPD that could plausibly be interpreted as continuing acts meant to protect the Assailants from legal redress. For example, when Plaintiff Buchmeier's attorney contacted the BPD Chief to insist on pressing criminal charges (at some unspecified time after the Incident but before October 2013), the Chief indicated that a criminal investigation of the Incident was open. This assertion was contrary to the Plaintiffs' understanding that all investigations of the matter had ceased and could indicate

9

that the BPD was conducting a sham investigation to cover up the Assailants' culpability. Consequently, the facts alleged do not definitely preclude Plaintiffs' theory of a continuing violation. *See Ollins v. O'Brien*, No. 03 C 5795, 2005 WL 730987, at *15 (N.D. Ill. Mar. 28, 2005) (holding that a continuing tort theory may apply when plaintiffs alleged intentional infliction of emotional distress due to a continuing cover-up by city officials).

### 2. Claims against Defendant Sassetti

Unlike Plaintiffs' allegations against the City of Berwyn (by way of its employees in the BPD), all of the allegations against Defendant Sassetti stem from the night of the Incident and the following morning. Plaintiffs accuse Sassetti of various unlawful actions, including coercing them into signing criminal releases, exercising undue influence over the investigation of the Incident, and releasing prisoners without having the proper documentation completed. All of this alleged misconduct occurred by September 3, 2012, when Plaintiffs signed the criminal release forms, and all investigations of the Incident supposedly ceased. Given the lack of subsequent allegations against Sassetti, his acts cannot plausibly be interpreted as a "continuing violation." With this in mind, we must next determine the applicable statute of limitations. Because the instant lawsuit was filed on September 2, 2014—more than one year after the misconduct alleged against Sassetti—the state law claims against him are time-barred if the Tort Immunity Act applies.

For an employee to be covered by the Tort Immunity Act, he must be acting within the scope of his employment at the time of the alleged injury. *Hedges v. Cnty. of Cook*, No. 96 C 6228, 1997 WL 269632, at *4 (N.D. Ill. May 13, 1997). Illinois courts consider an employee's conduct "within the scope of employment" if his acts are "closely connected with what [he] is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as

methods, even though quite improper ones, of carrying out the objective of employment." *Id.* (internal citations omitted). All of Plaintiffs' allegations against Sassetti revolve around his handling of the investigation, which clearly falls within the scope of his employment as a police officer. *See Walley v. Placencia*, No. 02 C 6296, 2005 WL, 2737001, at *3 (N.D. Ill. Oct. 20, 2005) (finding that police officer was acting in his official capacity regardless of plaintiff's assertion that officer was sued in his own behalf); *Wilson v. City of Chicago*, 900 F. Supp. 1015, 1029 (N.D. Ill. 1995) (finding that police officers were acting within the scope of their employment, despite ulterior motives, because they were acting in the course of an official police investigation). Therefore, the state law claims against Sassetti are subject to the one-year statute of limitations of the Tort Immunity Act and are, accordingly, dismissed.[3]

### 3. Claims Against Defendant Mayor Lovero

Like Plaintiffs' allegations against Sassetti, their allegations against Mayor Lovero cannot plausibly be considered a "continuing violation." The complaints against Lovero boil down to a single act: his alleged threat that criminal charges could be filed against Plaintiff Buchmeier. Even if the Plaintiffs continued to experience residual distress, any injuries attributable to the Mayor stemmed from this discrete threat and were not the result of an ongoing violation. Nonetheless, Plaintiffs' state law claims against the Mayor cannot be dismissed on the basis of any statute of limitation because the complaint does not specify the date of the Mayor's alleged misconduct. To that end, this Court cannot determine whether the corresponding claims are time-barred. There is thus no need to evaluate whether Plaintiffs' claims were asserted

---

[3] In their response to Defendants' motion to dismiss, Plaintiffs request leave to amend their complaint in the event that their allegations failed to charge either Defendant as an individual. This Court chooses to exercise its broad discretion to deny such requests when an amendment would be futile. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Plaintiffs' allegations clearly portray Sassetti as acting within the scope of his employment, so any amended complaint that properly charged him as an individual in Counts II and III would nonetheless fail to state a non-time-barred claim.

11

against Mayor Lovero individually or solely as a City of Berwyn official and, consequently, whether the Tort Immunity Act applies.

B.     **Substantive Causes of Action for State Law Claims**

Plaintiffs allege that every City of Berwyn official, member of the BPD, and other non-defendants committed—and conspired to commit—extreme and outrageous conduct by covering up the Assailants' culpability in the Incident. Having disposed of the claims against Defendant Sassetti as time-barred, I will address the remaining claims against Defendant Lovero and Defendant City of Berwyn separately. For the reasons set forth below, I find that Plaintiffs have failed to state sufficient claims of intentional infliction of severe emotional distress against all remaining Defendants.

Under Illinois law, IIED claims must allege that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended their conduct to inflict severe emotional distress or knew there was a high probability of such result; and (3) the defendants' conduct in fact caused severe emotional distress. *Love v. City of Chicago*, No. 09 C 03631, 2015 WL 2193712, at *13 (N.D. Ill. May 7, 2015). To constitute "extreme and outrageous" conduct, a defendant's behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency," *id.* (citations omitted), such that a "reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Parker v. Side by Side, Inc.*, 50 F.Supp.3d 988, 1023 (N.D. Ill. 2014). As a result, the standard for showing IIED is high, and liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *9 (N.D. Ill. June 2, 2015) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E. 2d 765, 767 (Ill. 1976)). To that end, it is not enough to demonstrate that a defendant's actions were motivated by tortious,

malicious, or even criminal intent. *Id.*

### 1. Claims against Defendant Mayor Lovero

The IIED claim against Mayor Lovero is rooted in his alleged threat that criminal charges could be filed against Buchmeier if Plaintiffs pursued criminal complaints against the Assailants. Although threats are generally not sufficient to support an IIED action, *id.*, Illinois courts have found that a threat can rise to the level of extreme and outrageous behavior "if the defendant is in the position to carry out that threat by virtue of the authority or control he or she exerts over the plaintiff, action which would constitute an abuse of the defendant's position." *Torres v. All Town Bus Services, Inc.*, No. 1-10-1853, 2011 WL 10069610, at *5 (Ill. App. Ct. Mar. 25, 2011). Even then, Illinois courts have refused to recognize IIED claims absent allegations that a defendant carried out his supposed threat. *See, e.g., Torres,* at *5 (stating that "no showing has been made that the defendants abused their position by carrying out the alleged threat. Absent a showing of abuse, we cannot say the threats the plaintiff attributes to the defendants rose to the level of extreme and outrageous behavior . . . ."). In the present case, Plaintiffs do not claim that Mayor Lovero took any affirmative steps to act on his alleged threat and materially abuse his position of power. Absent such additional allegations, the Mayor's position of authority alone does not elevate his behavior beyond the realm of non-actionable "insults, indignities, threat, [and] annoyances." *Arce*, 2015 WL 3504860, at *9.

Even in cases where defendants wrongly accuse plaintiffs of something as serious as breaking the law, Illinois courts have maintained the high threshold for "extreme and outrageous" conduct and have generally sustained only those claims where false accusations led to substantive legal action against the plaintiffs. *See, e.g., Holder v. Ivanjack*, 39 F.Supp.2d 965, 969-70 (N.D. Ill. 1999); *Wallace v. City of Zion*, No. 11C2859, 2011 WL 3205495, at *6 (N.D.

13

Ill. July 28, 2011). Here, Plaintiffs have not claimed that Lovero's supposedly false accusation led to any legal process, such as the filing of a criminal complaint. *See Holder*, 39 F.Supp.2d at 969-70 (holding that police officers' filing of false criminal charges following their threatening confrontation with plaintiff can underpin an IIED claim). Plaintiffs have not even alleged that Lovero communicated his accusations to the police. *See Wallace*, 2011 WL 3205495, at *6 (finding valid IIED claim where defendant called police and falsely accused plaintiff of breaking the law, leading to police officers' beating and arresting plaintiff). Instead, Plaintiffs' complaint depicts an isolated threat that never materialized and thus fails to reach the requisite level of "extreme and outrageous" behavior. *See Henry v. Ramos*, No. 97 C 4025, 1997 WL 610781, at *2 (N.D. Ill. Sept. 28, 1997) (finding plaintiff's IIED claim sufficient because "defendants did not abuse their power over plaintiff *with threats alone*. Instead, defendants used their power to arrest and eventually convict an innocent person . . . .") (emphasis added). For all of the reasons set forth above, Plaintiffs have failed to state a sufficient claim of IIED against Defendant Lovero.

### 2. Claims Against Defendant City of Berwyn

Plaintiffs' claim against other City of Berwyn officials also fails to reach the requisite level of extreme and outrageous conduct. Plaintiffs assert that members of the BPD orchestrated a sham investigation of the Incident in an attempt to justify their failure to pursue criminal charges against the Assailants. Like the Mayor, the BPD officers occupy positions of authority, and their conduct is subjected to heightened scrutiny under the "extreme and outrageous" standard. *See Love*, 2015 WL 2193712, at *13. Nevertheless, "there must be allegations of more than a misuse of police authority to support a claim of extreme and outrageous behavior . . . ." *Carr v. Vill. of Richmond*, No. 96 C 50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996). In

a case similar to the present action, this Court found that allegations against police officers for a negligent investigation and failure to press charges against potential offenders failed to establish an IIED claim. *Shelton v. Schneider*, No. 05 C 5955, 2006 WL 59364, at *7 (N.D. Ill. Jan. 4, 2006). In *Shelton*, the court held that actions by police chiefs and officers in relation to their investigation—or lack thereof—of allegedly unlawful conduct did not rise to the level of extreme and outrageous behavior. *Id.* Similarly, Plaintiffs' claim against members of the BPD, based on allegations of an improper or non-existent investigation, fails to plead more than a mere "misuse of police authority," *Carr*, at *8, and thus does not state a claim that BPD officials' conduct was "extreme and outrageous." Consequently, Plaintiffs have failed to state an actionable claim of IIED against the City of Berwyn employees in the BPD.

For all of the reasons set forth above, Plaintiffs have failed to sufficiently plead state law claims of intentional infliction of severe emotional distress. I therefore dismiss Count II against all Defendants. Following the dismissal of Plaintiffs' Count II claims, Plaintiffs are precluded from alleging a state claim of conspiracy to inflict emotional distress. *See Davis v. City of Chicago*, No. 03 C 8631, 2004 WL 728215, at *3 (N.D. Ill. Apr. 2, 2004) (holding that failure to state an emotional distress claim precludes corresponding conspiracy claim). Therefore, Count III is dismissed against all Defendants. Given the dismissal of all the underlying claims against city employees, Plaintiffs' derivative claims against Defendant City of Berwyn for *respondeat superior* (Count IV) and indemnification (Count V) are also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in its entirety.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 23, 2015